## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JENNA CLANCY, ADRIENNE
KARIM, and GREGG WELTE,                          Case No.

      Plaintiffs,                                Hon.

v.

THE HERSHEY COMPANY,

      Defendant.

---

Noah S. Hurwitz (P74063)
Brendan J. Childress (P85638)
HURWITZ LAW PLLC
Attorneys for Plaintiffs
340 Beakes St., Suite 125
Ann Arbor, MI 48104
(844) 487-9489
Noah@hurwitzlaw.com
Brendan@hurwitzlaw.com

---

## PLAINTIFFS' COMPLAINT AND JURY DEMAND

Plaintiffs Jenna Clancy, Adrienne Karim, and Gregg Welte, by and through their attorneys, Hurwitz Law PLLC, hereby state the following for their Complaint and Jury Demand against Defendant The Hershey Company ("Hershey's):

1.      There is no "pandemic exception" to the protections against religious discrimination and retaliation afforded by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Plaintiffs were loyal employees who cumulatively dedicated multiple centuries of their lives to serving one of the largest

1

candy manufacturers in the world. Plaintiff Karim had been working remotely because of the pandemic since about March 16, 2020 and was hired into a new, permanently remote position in May of 2021, Plaintiff Clancy had worked remotely since she was hired in August of 2016, and Plaintiff Welte worked remotely since February of 2015. Hershey's announced its vaccine mandate for certain employees on August 4, 2021. The vaccine mandate applied only to corporate and commercial employees, not to manufacturing and retail employees. The last day for certain employees to be vaccinated was October 4, 2021. Plaintiffs thereafter requested accommodations, but their requests were denied allegedly because of "undue hardship" from November 1, 2021 to November 16, 2021. Plaintiffs were categorically reprimanded (less than one week before Christmas) before they were terminated for noncompliance.  There is no reason why a host of accommodations would not have been effective, particularly since they had been working remotely since March 16, 2020. Plaintiffs could have worn masks in the workplace, social distanced in the workplace, participated in temperature screening, tested periodically, engaged in frequent sanitizing and disinfecting, or continued working remotely. Hershey's cannot satisfy its burden of proving undue hardship when it never required or manufacturing, retail, and other front-line employees to be vaccinated. Plaintiffs denied accommodations to the vaccine mandate were forced into the horrible position of choosing between vaccination or termination, as they

found themselves facing a "crisis of conscience." *Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021). Plaintiffs demand compensatory damages they have incurred as a direct and proximate result, including for monetary loss and non-monetary loss, exemplary and punitive damages, prejudgment interest, declaratory relief, reinstatement, attorneys' fees and costs, and such other relief as in law or equity may pertain.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff Clancy is an individual residing in Hudsonville, Michigan.

3.      Plaintiff Karim is an individual residing in Hummelstown, Pennsylvania.

4.      Plaintiff Welte is an individual residing in Fruitland, Idaho.

5.      Hershey's is a foreign profit corporation incorporated under the laws of the State of Delaware with its principal place of business in Hershey, Pennsylvania.

6.      Hershey's regularly conducts business in the State of Michigan.

7.      The U.S. District Court for the Western District of Michigan has federal question jurisdiction over the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") claims pursuant to 28 U.S.C. § 1331.

8.      Title VII contains its own venue provision that states:

> Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter.  **Such an action may be brought in *any***

> ***judicial district*** **in the State in which the unlawful**
> **employment practice is alleged to have been**
> **committed**, in the judicial district in which the
> employment records relevant to such practice are
> maintained and administered, or in the judicial district in
> which the aggrieved person would have worked but for the
> alleged unlawful employment practice, but if the
> respondent is not found within any such district, such an
> action may be brought within the judicial district in which
> the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3).

9.      "Section 5(f)(3) is not simply a supplement to 28 U.S.C. § 1391; it is

the exclusive venue provision for all Title VII discrimination matters." *Downing v.*

*Foley & Lardner LLP*, 2010 WL 1494767 at *3 (E.D. Mich. Apr. 9, 2010).

10.      "Title VII's venue provision takes precedence over the general venue

provision under § 1391 when the Title VII claim is brought along with claims

brought under other federal statutes."  *Id.*

11.      Courts in the Sixth Circuit afford the portion of Title VII's venue

provision—"[s]uch an action may be brought in any judicial district in the State in

which the unlawful employment practice is alleged to have been committed"—its

ordinary meaning. *See Phillippe v. Allen Cnty. Child Support*, 2007 WL 4460625,

at *2 (S.D. Ohio Dec. 14, 2007) ("[t]he plain language of §2000e-5(f)(3) dictates

that any of the three venue prongs listed are grounds for proper venue, as illustrated

by the statute's use of the word 'or,' a word whose purpose is to indicate

alternatives"); *Van Cleave v. Univ. of S.*, 2022 WL 2115304 at *2 (M.D. Tenn. June

4

13, 2022) (quoting *Richardson v. Alabama State Bd. of Educ.*, 935 F.2d 1240, 1248 (11th Cir. 1991) (Title VII's provision "means anywhere in the relevant state.").

12.    The "Title VII venue provision was enacted for the purpose of 'ensur[ing] that an aggrieved party would be afforded a range of choices in selecting her judicial forum.'" *Kessler v. Direct Consulting Assocs. LLC*, 2018 WL 7890862, at *5 (E.D. Mich. July 6, 2018) (quoting *Thomas v. Rehab Servs. Of Columbus, Inc.*, 45 F. Supp. 2d 1375, 1381 (M.D. Ga. 1999).

13.    Since venue is proper in the Western District of Michigan pursuant to Title VII's venue provision, this Court must defer to Plaintiffs' choice of forum.

14.    Additionally, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events complained of herein occurred in this District and Division.

15.    Plaintiffs all timely filed charges of religious discrimination with the Equal Employment Opportunity Commission and received right to sue letters.

16.    On November 7, 2022, the Parties entered into the Tolling Agreement, stating:

> Complainants have indicated their intent to initiate formal court action against Hershey concerning claims for religious and/or disability discrimination under Title VII of the Civil Rights Act ("Title VII") and the Americans with Disabilities Act ("ADA"), and various state law equivalents. Counsel for Complainants and counsel for Hershey agree that settlement discussions are warranted

and enter into this Agreement to allow the parties to engage in such discussions.

17.    The Parties resolved a number of claims pursuant to the Tolling Agreement.

18.    On March 21, 2023, Plaintiffs requested termination of the Tolling Agreement "with the understanding that Clancy, Karim, and Welte have 30 days from today to file their federal claims."

19.    The Tolling Agreement expressly states that "The Tolling Period will terminate automatically upon the filing or commencement of any lawsuit, arbitration, or other proceeding against Hershey raising Tolled Claims" and that "Hershey may unilaterally terminate this Agreement by providing 90 days written notice to counsel for Complainants."

20.    Defendant never terminated the Tolling Agreement.

21.    The Tolling Agreement states:

The Parties agree that this Agreement shall not prejudice any defense that Hershey currently possesses regarding timeliness, statutes of limitations, scope of any Equal Employment Opportunity Commission ("EEOC") Charge, or any other defense, and shall not prejudice any future defense, provided that the time period while this Tolling Agreement is effective shall not be counted against the timeliness of the Complainant's claims.

22.    Defendant is contractually and equitably estopped from claiming that Plaintiffs' Title VII claims are not timely.

6

## FACTUAL ALLEGATIONS

### The Vaccine Mandate

23.    The Food and Drug Administration ("FDA") issued an Emergency Use Authorization ("EUA") for the Pfizer-BioNTech vaccine on December 1, 2020.

24.    Hershey's announced its vaccine mandate for certain employees on August 4, 2021.

25.    The vaccine mandate applied only to corporate, and commercial employees, not to "frontline team members," including manufacturing and retail employees working in the theme park, Hershey's Chocolate World and visiting thousands of stores like Walmart, Kroger, and gas stations on a daily basis.

26.    Hershey's deemed other measures besides the vaccine, including social distancing, temperature screening, and hand sanitizing, to be sufficient to protect the health and safety of manufacturing and retail employees.

27.    The last day for certain employees to be vaccinated was October 4, 2021.

28.    Hershey's, a corporation that was founded over a century ago, had never mandated its employees receive any vaccinations prior to October 4, 2021.

29.    Hershey's admitted that it adopted the mandate in part because companies such as Wal-Mart, Tyson Foods, and Netflix adopted mandates.

7

30.    Hershey's hosted two mandatory "learning sessions with medical experts," including Dr. Jessica Ericson, Dr. Christiana Oji-Mmuo, and Dr. Catharine Paules, regarding the vaccine on August 11, 2021 and August 18, 2021.

31.    Hershey's announced that it would offer accommodations to the vaccine on August 16, 2021. In the same announcement, employees were encouraged to watch the recording of the "learning session" on August 11, 2021.

32.    Hershey's contemplated the "pre-approved" accommodation of mask wearing. *FAQ's: Vaccination* (Oct. 1, 2021) ("If I am approved for a medical or religious exemption, do I have to wear a mask? Yes, masks will be required.").

33.    The U.S. Supreme Court later stayed the vaccine mandate promulgated by the Occupational Safety and Health Administration ("OSHA") on January 13, 2022. *Nat'l Fed'n of Indep. Businesses v. Dep't of Lab.*, 142 S. Ct. 661 (2022).

34.    Plaintiffs submitted religious and medical accommodation requests from August 17, 2021 to October 4, 2021.

35.    Plaintiffs' requests were denied from November 1, 2021 to November 16, 2021.

36.    Plaintiffs were terminated from January 21, 2022 to February 7, 2022.

37.    Hershey's announced that it would begin "reducing restrictions in the corporate and commercial functions of the business" on February 17, 2022, only

three (3) weeks after they were terminated. At that point, masks became optional for

vaccinated workers and social distancing restrictions were lifted.

38.     Hershey's actively coerced employees to abandon their religious

convictions.

39.     Hershey's discriminated against employees with disabilities.

40.     Plaintiffs denied religious accommodation to the vaccine mandate and

forced into the horrible position of choosing between vaccination or termination:

> Forcing individuals to choose between their faith and their
> livelihood imposes an obvious and substantial burden on
> religion . . . vaccine mandates . . . presents a crisis of
> conscience for many people of faith.  It forces them to
> choose between the two most profound obligations they
> will ever assume—holding true to their religious
> commitments and feeding and housing their children.  To
> many, this is the most horrifying of Hobson's choices.

*Sambrano v. United Airlines, Inc*., 19 F.4th 839, 841 (5th Cir. 2021).

**Plaintiffs' Religious Accommodation Requests**

41.     Hershey's made employees who sought religious accommodations

complete a "Religious Accommodation Request Form," wherein they were asked to

provide the name of their religion, the location where they worship, applicable

"religious writings," and a "written explanation from a religious leader,

clergyperson, fellow congregant," or someone else familiar with their religious

beliefs regarding how their beliefs "conflict with the job requirement at issue."

42.     Hershey's had no objective basis for seeking this information at the outset. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (Mar. 1, 2022) ("*[I]f an employer has an objective basis for questioning either the religious nature or the sincerity of a particular belief*, the employer would be justified in making a limited factual inquiry and seeking additional supporting information.")

43.     Plaintiff Karim submitted a "Religious Accommodation Request Form" on or about August 17, 2021, wherein she explained her religious beliefs as follows: "I am a born-again Christian. I attend Harrisburg First Assembly of God for worship . . . I choose to honor God with my body as a temple of his Holy Spirit."

44.     Plaintiff Karim submitted a "Statement of Religious Exemption to Immunization Mandate Form," signed by Pastor Terry Lamer of Harrisburg, Pennsylvania with Harrisburg First Assembly of God in Harrisburg, Pennsylvania.

45.     Defendant never contacted Pastor Lamer.

46.     Plaintiff Clancy listed her priest, Father Bill, on her religious accommodation request as well, which Defendant also failed to contact.

47.     On September 28, 2021, nearly a month after Plaintiff Clancy submitted her religious accommodation request, Defendant conducted a virtual meeting with her.

10

48.     Defendant asked Plaintiff Clancy numerous questions regarding her religious beliefs and the COVID-19 vaccine, including the following:

a.     How long have you been this way?

b.     Are there over the counter medication in your cupboards?

c.     What care do you give your children when they are sick?

d.     Do you take over the counter medication?

e.     What are your parents' vaccination statuses?

f.     What is your husband's vaccination status?

g.     What are your parents' religious beliefs?

h.     Were you vaccinated as a child?

i.     What is your priest's view on the COVID-19 vaccine?

j.     Does Joe Biden potentially mandating the vaccine change your mind?

49.     Plaintiff Karim was asked similar questions during Defendant's supposed "interactive process."

50.     Plaintiff Karim also submitted a document citing scripture that she utilized to come to her decision regarding the COVID-19 vaccination, and was told that The Bible isn't "sound doctrine."

51.     When Plaintiff Karim was asked what she would accept as an accommodation, she stated that she believed Defendant could set the guidelines.

11

Defendant informed Plaintiff Karim that this "wasn't how it worked" and that she needed to state what she was willing to do.

52.   Plaintiff Karim put into writing that she would follow whatever accommodation they deemed necessary.

53.   Plaintiff Welte submitted his first accommodation request on September 25, 2021.

54.   Defendant required that Plaintiff Welte utilize the Company's accommodation form, so he submitted his request again on October 19, 2021.

### Hershey's Responses to Accommodation Requests

55.   Plaintiffs' requests were categorically denied from November 1, 2021 to November 16, 2021.

56.   Hershey's gave them up to six (6) weeks to receive vaccines by Pfizer or Moderna or three (3) weeks to receive a vaccine by Johnson & Johnson.

57.   Hershey's alleged that accommodating their disabilities and religious beliefs would impose "undue hardship" and risk "the health and safety" of fellow employees, customers, business partners, and members of the public.

58.   Hershey's candy poses a greater threat to health and safety than accommodating unvaccinated employees. Forbes, *Obesity Epidemic Continues: New Study Shows Which Americans Gain the Most Weight* (June 24, 2022); Kaia Hubbard, *The Pandemic Has Worsened the U.S. Obesity Epidemic* (Sept. 15, 2021);

American Cancer Society, *Excess Body Weight: A Major Health Issue in America* (June 9, 2020); David Blumenthal & Shanoor Seervai, *Rising Obesity in the United States Is a Public Health Crisis* (Apr. 24, 2018).

59.    There is no reason why a host of accommodations would not have been effective, particularly since they had been working remotely since March 16, 2020.

60.    Plaintiffs could have worn masks in the workplace.

61.    Plaintiffs could have social distanced in the workplace.

62.    Plaintiffs could have participated in temperature screening.

63.    Plaintiffs could have tested periodically.

64.    Plaintiffs could have engaged in frequent sanitizing and disinfecting.

65.    Plaintiffs could have continued working remotely.

66.    Plaintiffs could have been reassigned.

67.    On November 1, 2021, Defendant also informed Plaintiff Clancy that she would need to discuss her plans to comply with the vaccination within 7 business days, creating another arbitrary deadline that also further established a hostile work environment.

68.    On November 19, 2021, Plaintiff Welte received a "written warning" after having a phone conversation with Ms. Zefran, in which she refused to explain the "undue hardship claim" and stated that he would be given the month of December to reconsider his position.

69.     In this conversation, Ms. Zefran stated that if Plaintiff Welte did not comply by January, he would then be placed on a three-day unpaid leave of absence.

70.     Ms. Zefran and Senior Manager Erin Shearer issued "written warnings" on December 21, 2021, less than one week before Christmas, to all other employees denied accommodations who failed to upload their vaccination card by January 5, 2022.

71.     Plaintiffs were terminated from January 21, 2022 to February 7, 2022.

72.     Examples of reasonable accommodations for unvaccinated employees include wearing a mask, working at a social distance from others, working a modified shift, getting tested periodically, telework, and reassignment. U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

*73.*     Hershey's did not explain why any proposed accommodation was not granted. *Id.* ("If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted.").

74.     Generally, the sincerity of an employee's religious beliefs "is not open to question." *United States v Seeger*, 380 U.S. 163, 185 (1965).

75.     Title VII's statutory definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

14

76.     Hershey's evaded any sort of "bilateral cooperation." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

77.     "Bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Id.*

78.     Plaintiffs were terminated from January 21, 2022 to February 7, 2022.

**Hershey's Did Not Base Its Decision on Undue Hardship,
Nor Could It Establish Undue Hardship**

79.     The prohibition against religious discrimination imposes a "duty" on employers to accommodate sincere religious beliefs, absent "undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

80.     The employer bears the burden of showing "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc.*, 571 F.2d 338, 341 (6th Cir.1978).

*81.*     An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975). The operative word is "undue," meaning that "something greater" than a mere hardship is required. *Id.*

82.     Hershey's cannot satisfy its burden of proving undue hardship.

83.     Hershey's does not require visitors to be vaccinated.

84.   Hershey's does not require manufacturing and retail employees, including retail employees working in Hershey's Chocolate World and employees visiting retail stores like Walmart, Kroger, and gas stations on a daily basis, to be vaccinated.

85.   Hershey's never engaged in the interactive process.

86.   Hershey's allegations of undue hardship not only lack scientific backing but also directly contravene scientific evidence supporting the effectiveness of practices such as wearing masks, social distancing, and handwashing in preventing infection and death. See Stella Talic et al., *Effectiveness of Public Health Measures In Reducing The Incidence Of Covid-19, SARS-Cov-2 Transmission and Covid-19 Mortality: Systematic Review And Meta-Analysis*, BRIT. MED. J. (2021).

### COUNT I
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.
### <u>Religious Discrimination–Failure to Accommodate</u>
### <u>Plaintiffs Clancy, Karim, and Welte</u>

87.   Plaintiffs restate the foregoing paragraphs as set forth fully herein.

88.   At all times relevant hereto, Plaintiffs were employees and Defendant was their employer for the purposes of 42 U.S.C. § 2000e, *et seq*.

89.   Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e *et seq*., makes it unlawful for an employer to fail or refuse to reasonably accommodate the religious beliefs and practices of an employee or prospective employee.

90.    Title VII prohibits an employer from discriminating against an employee "because of such individual's... religion." 42 U.S.C. § 2000e-2(a)(1).

91.    This "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate an employee's... religious observance or practice without undue hardship on the conduct of the employer's business." *Id*. § 2000e(j).

92.    After receiving an accommodation request, "the employer is obligated by law to engage in interactive process – a meaningful dialogue with the employee[.]" *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

93.    The employer must act in "good faith," *Id*., and the employee must "make a good faith attempt to satisfy his needs through means offered by the employer," *Brener v. Diagnostic Ctr. Hosp*., 671 F.2d 141, 146 (5th Cir. 1982).

94.    Title VII makes it unlawful for an employer to retaliate against an employee who engaged in protected activity.

95.    Plaintiffs hold sincere *bona fide* religious beliefs that preclude them from receiving a COVID-19 vaccine.

96.    Plaintiffs informed Defendant of those beliefs and requested religious accommodations from the vaccine mandate.

97.    Defendant refused to engage in the interactive process with Plaintiffs regarding their religious accommodation requests.

17

98.     Under Title VII, Plaintiffs can establish a *prima facie* case of religious discrimination based on a failure to accommodate by showing: (1) they have a *bona fide* religious belief that conflicts with an employment requirement; (2) about which they informed the [Defendant]; and (3) they suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

99.     Multiple accommodations could have been offered to Plaintiffs.  They include mask wearing and periodic testing for COVID-19—the very same accommodations being offered to virtually every public and private employee in the State of Michigan.

100.    A "[r]easonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995).

101.    Defendant would not suffer undue hardship by granting Plaintiffs accommodation.  42 U.S.C. § 2000e(j).

102.    The issue became moot when Defendant failed to engage each employee in "a meaningful dialogue" about the accommodation request and learn whether an acceptable accommodation would impose undue hardship. *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

18

103.   Instead, Defendant announced a one-size-fits all approach to accommodation that deprived Plaintiffs of the conversation necessary to discover what accommodations were possible. *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996) ("courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary" and "[a] party that fails to communicate... may also be acting in bad faith").

104.   Irrespective of the interactive process, Defendant failed to provide Plaintiffs with reasonable accommodations for their religious beliefs.

105.   Defendant thereby discriminated against Plaintiffs because of their religious beliefs.

106.   Defendant's failure to provide religious accommodations has harmed and will continue to harm Plaintiffs.

107.   As a direct and proximate result of Defendant's violation of Title VII Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

108.   As a further direct and proximate result of Defendant's violation of Title VII, Plaintiffs have been denied employment and placed in financial distress and have suffered a loss of earnings and benefits, and a loss of and impairment of

her earning capacity and ability to work and will so suffer in the future; they have been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

109.   By failing to engage in the interactive process or offer any reasonable accommodation, Defendant's discriminatory actions were intentional and/or reckless and in violation of Title VII.

**COUNT II**
**Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.**
**Disparate Treatment Discrimination**
**Plaintiffs Clancy, Karim, and Welte**

110.   Plaintiffs restate the foregoing paragraphs as set forth fully herein.

111.   "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing (1) they were a member of a protected class, (2) they experienced an adverse employment action (3) they were qualified for the position, and (4) they were replaced by a person outside of the protected class or were treated differently than similarly situated employees."  Tepper v. Potter, 505 F.3d 508, 515 (6th Cir. 2007).

112.   Plaintiffs espoused religious beliefs and are therefore members of a protected class.

113.   Defendant directly discriminated against Plaintiffs by terminating them after they stated their sincerely held religious beliefs that conflicted with Defendant's subjected standard of religiosity.

114.   Defendant allowed other unvaccinated employees without Plaintiffs' same religious beliefs to be exempted from Defendant's vaccine mandate policy.

115.   Defendant ultimately terminated Plaintiffs' employments.

116.   It is undisputed that Plaintiffs were qualified for their positions.

117.   Plaintiffs were treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite not being vaccinated.

118.   Plaintiffs were terminated and replaced with people of different religious beliefs.

119.   Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of their requests and will so suffer in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully demand the following relief:

a.    Compensatory damages for monetary loss and non-monetary loss;

b.    Exemplary and punitive damages;

c.      Prejudgment interest;

d.      Declaratory relief;

e.      Reinstatement;

f.      Reasonable attorneys' fees and costs; and

g.      Such other relief as in law or equity may pertain.

                              Respectfully Submitted,

                              HURWITZ LAW PLLC

                              /s/ *Noah S. Hurwitz*
                              Noah Hurwitz (P74063)
                              Attorneys for Plaintiffs
                              340 Beakes St., Suite 125
                              Ann Arbor, MI 48104
                              (844) 487-9489
Dated: April 17, 2023         *noah@hurwitzlaw.com*

22

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JENNA CLANCY, ADRIENNE
KARIM, and GREGG WELTE,                           Case No.

      Plaintiffs,                                Hon.

v.

THE HERSHEY COMPANY,

      Defendant.

---

Noah S. Hurwitz (P74063)
Brendan J. Childress (P85638)
HURWITZ LAW PLLC
Attorneys for Plaintiffs
340 Beakes St., Suite 125
Ann Arbor, MI 48104
(844) 487-9489
Noah@hurwitzlaw.com
Brendan@hurwitzlaw.com

---

## JURY DEMAND

Plaintiffs Jenna Clancy, Adrienne Karim, and Gregg Welte, ("Plaintiffs"), by

and through their attorneys, HURWITZ LAW, PLLC, hereby demand a trial by jury,

for all issues so triable.

                              Respectfully Submitted,

                              HURWITZ LAW PLLC

                              /s/ Noah S. Hurwitz
                              Noah Hurwitz (P74063)
                              Attorneys for Plaintiffs

23

340 Beakes St., Suite 125
Ann Arbor, MI 48104
(844) 487-9489
Dated: April 17, 2023                    *noah@hurwitzlaw.com*